```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
                       SOUTH BEND DIVISION
```

TRACY L. BAUTISTA,              )
                                )
Plaintiff,                      )
                                )
vs.                             )     No. 3:14-CV-647
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of          )
Social Security,                )
                                )
Defendant.                      )

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits and Supplemental Security Income to Plaintiff, Tracy L. Bautista. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On April 20, 2011, Plaintiff, Tracy L. Bautista ("Bautista"), applied for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq*. She also applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. section 1381 *et. seq*.

Bautista alleged her disability began on December 20, 2010. The Social Security Administration denied her initial applications and also denied her claims on reconsideration. On September 5, 2012, Bautista appeared with her attorney and testified at an administrative hearing before Administrative Law Judge ("ALJ") Mark C. Ziercher ("Ziercher"). In addition, Robert Barber testified as a vocational expert ("VE"). On September 28, 2012, ALJ Ziercher denied Bautista's claims, finding that Bautista had not been under a disability as defined in the Social Security Act.

Bautista requested that the Appeals Council review the ALJ's decision. This request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a)(2005). Bautista has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Bautista was born on November 21, 1971, and was 39 years old on the alleged disability onset date. (Tr. 23). Bautista's alleged impairments include osteoarthritis, obesity, asthma, obstructive sleep apnea, depression, and anxiety. (Tr. 14). She has a limited education: she completed tenth grade. (Tr. 23). Her past relevant work includes work as an industrial cleaner. (Tr. 23). The medical evidence is largely undisputed and has been set forth in great detail

in both the ALJ's decision and Bautista's opening brief. There is no reason to repeat it in detail here, although pertinent details are discussed below as needed.

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347, F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB or SSI under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:  Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2:  Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3:  Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4:  Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5:  Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case the ALJ found that Bautista was not engaged in substantial gainful activity and that she suffered from multiple severe impairments. The ALJ further found that Bautista did not meet or medically equal one of the listed impairments. The ALJ found that

Bautista retained the physical residual functional capacity to perform a reduced range of light work. More specifically, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform work at the light exertional level. She can stand and/or walk for up to 30 minutes uninterrupted for a total of 4 hours in an 8-hour workday, and can sit for up to 1 hour uninterrupted for up to a total of 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently bilaterally handle and finger. She can have frequent exposure to wetness, moving mechanical parts, and high, exposed places (as defined in the Selected Characteristics of Occupations). She can have frequent exposure to extreme heat, and humidity (as defined in the Selected Characteristics of Occupations). Regarding respiratory irritants (e.g., fumes, noxious odors, dusts, mists, gases, and poor ventilation), she can work in situations up to but excluding concentrated exposure (e.g., a manufacturing floor or construction site). She can perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks.

(Tr. 18). With this RFC, the ALJ found that Bautista could perform a variety of jobs, including information clerk, cafeteria cashier, usher, general office clerk, parimutuel ticket checker, and order clerk. (Tr. 24). Thus, Bautista's claim failed at step five of the evaluation process.

Bautista believes that reversal is required because the ALJ's decision was not supported by substantial evidence. More specifically, Bautista believes that the ALJ erred by failing to properly evaluate: (1) the opinion of Dr. Donley, a treating

physician; (2) the opinion of Connie Leese, a nurse practitioner; and (3) Bautista's credibility.

The ALJ's Consideration of Evidence from Dr. Donley

Bautista claims the ALJ erred in evaluating the evidence obtained from one of her treating physicians, Dr. Donley. An ALJ "must always consider and address medical source opinions." Social Security Ruling ("SSR") 96-8p. Furthermore, a treating physician's medical opinion must be given controlling weight if it is "well supported" and "not inconsistent with other substantial evidence in the case record." SSR 96-2p. Additionally, the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

If the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the ALJ must apply the following factors to determine the proper weight to give the opinion:

> (1) the length of the treatment relationship and frequency of examination;
>
> (2) the nature and extent of the treatment relationship;
>
> (3) how much supporting evidence is provided;
>
> (4) the consistency between the opinion and the record as a whole;

> (5) whether the treating physician is a specialist;
>
> (6) any other factors brought to the attention of the Commissioner.

20 C.F.R. §§ 404.1527(d)(2) and 416.927(a)-(d); *see Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). It is reversible error for an ALJ to discount the medical opinion of a treating physician without applying this legal standard and for further failing to support the decision with substantial evidence. *Moss*, 555 F.3d at 561; *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (finding the ALJ's rejection of a treating physician's mental residual functional capacity questionnaire was not substantially supported).

In determining Bautista's RFC, ALJ Ziercher noted that "[t]he medical evidence contains no medical source statements by a treating health professional." (Tr. 21). Bautista argues that her treating physician, Dr. Donley, did in fact provide a medical source statement and that the ALJ failed to acknowledge it in his decision and failed to conduct the appropriate analysis required under SSR 96-2p.

On January 3, 2011, roughly two weeks after Bautista's alleged onset date, Dr. Donley completed a form titled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)." (Tr. 336-39). Dr. Donley indicated that Bautista had been diagnosed with rheumatoid arthritis, fibromyalgia, bilateral knee arthritis and left knee tendinitis. (Tr. 337). She

indicated that Bautista was unable to perform repetitive upper body motions, lifting more than ten pounds, overhead reaching, and squatting. (*Id.*). She further indicated that this condition began approximately December 24, 2010, and that the duration was indefinite. She indicated that Bautista needed to be off work from January 3, 2011, until February 3, 2011, pending rheumatology evaluation, and that it should be expected that Bautista will suffer from episodic flare-ups that will necessitate her being absent from work. She estimated that she might suffer a flare-up every three months necessitating a seven day absence from work, but that it would vary based on job and disease state. (Tr. 338). In a separate note, Dr. Donley indicated Bautista could return to work as of February 14, 2011, roughly six weeks later. (Tr. 340). In addition, she noted that Bautista was unable to work on several dates occurring shortly before and after her extended absence: December 15, 2010, December 18, 2010, February 24, 2011, February 25, 2011, and February 26, 2011. (Tr. 342).

Dr. Donley made clinical findings regarding Bautista during this period of time, including those recorded in notes of an office visit on December 20, 2010. She noted PIP swelling over both thumbs and some soft tissue swelling over both medial aspects of both wrists, but no rheumatoid nodules or other deformities. Notes from a visit on January 3, 2011, show bogginess and redness of the MCP's of the 2nd and 3rd fingers of her right hand. (Tr. 410).

The ALJ's decision does not address the restrictions Dr. Donley sets forth in the January 3, 2011, Certification of Health Provider form. The Commissioner argues that Dr. Donley never offered an opinion regarding Bautista's RFC - she offered only a temporary restriction on a work absence form. Nonetheless, even the Commissioner concedes in her brief that "the ALJ should have referenced them in his decision." (DE 24 at 5). According to the Commissioner, because Dr. Donley never stated that Bautista would be unable to work for any continuous 12 month period, the error is harmless. This is simply not the case. Dr. Donley opined that Bautista had an impairment significant enough to cause her to miss work and that the impairment was cyclical in nature such that those absences would occur with some frequency and last for a considerable period of time (she estimated a flare-up might occur once every three months and last seven days). If this opinion is credited, it would almost certainly preclude full-time work on an ongoing and continuous basis. The Commissioner further suggests that Dr. Donley's opinions are not relevant because the job Bautista was working at the time she requested that Dr. Donley complete the work absence forms were for absences from a medium level industrial cleaner job and the ALJ found Bautista could do only light and sedentary work. It is certainly possible that Dr. Donley would say that Bautista could indeed perform light or sedentary work despite her impairment, even during a flare-up, but that is not a part of the record and this Court cannot

speculate as to what opinion Dr. Donley may hold on a question that was not asked.

Through her presentation of the facts, the Commissioner also suggests that Dr. Donley's opinion should be discounted as speculative. Similarly, the Commissioner suggests that, perhaps when Dr. Donley authorized work absences on several dates after the fact, she was just doing Bautista a favor. *Citing Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). If the ALJ had evaluated the evidence at issue, he may very well have concluded that Dr. Donley was a little too accommodating of Bautista's requests for authorization for time off work. Indeed, as noted in *Dixon*, "[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." However, the Commissioner's after the fact musings on the evidence have no place in this Court's analysis. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95(1943); *Martinez v. Astrue*, Nos. 10-1957, 10-2603, 10-2080, 2011 WL 148810 at *1 (7th Cir. Jan 19, 2011)("[I]n defiance of the principle of *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S.Ct 454, 87 L.Ed. 626 (1943), the Justice Department's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error.")(quoting *Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010)). While perhaps not a blatant violation of the *Chenery* principle, the

Commissioner's pairing of certain facts with case citations and parentheticals violates the spirit of *Chenery*.

While ALJ's are not required to address every piece of evidence, they must build a "logical bridge" between the evidence and conclusions such that meaningful review is possible. *See Phillips v. Astrue*, 413 Fed. Appx. 878, 885 (7th Cir. 2010); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)(An ALJ must "build an accurate and logical bridge from the evidence to his conclusion."). Here, the neglect of a significant opinion from a treating physician that her patient will suffer indefinitely from episodic flare-ups necessitating work absences for up to seven days cannot be described as harmless. Dr. Donley's opinions must be addressed on remand. If not given controlling weight, the ALJ must explain the reasons for the weight given to the opinion in accordance with SSR 96-2p.

Bautista' Remaining Arguments

Having found remand necessary on the basis of the ALJ's failure to address the opinion of Dr. Donley, this Court finds no compelling reason to address Bautista' remaining arguments in detail. This Court has considered Bautista's request that this Court award benefits rather than remand the case for additional proceedings but finds remand more appropriate here. This Court makes no findings regarding the merits of Bautista's claims. On remand, the ALJ should consider all of the evidence in the record and, if necessary, give the parties

the opportunity to expand the record so that the ALJ may build a logical bridge between the evidence and his conclusions.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

**DATED: August 7, 2015**               /s/RUDY LOZANO, Judge
                                        **United States District Court**